**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WILLEY MCINNIS, DEMETRIUS STEWART, SHARDAE BAILEY, and DONAMEEN JONES, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | 21-cv-00309 |
| v. | Judge Robert W. Gettleman |
| PARTY CITY CORPORATION, SURESTAFF, LLC, PREMIER EMPLOYEE SOLUTIONS, LLC, and MINUTEMEN OF ILLINOIS, INC., | |
| *Defendants*. | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs Willey McInnis, Demetrius Stewart, Shardae Bailey, and Donameen Jones (collectively, "Plaintiffs") bring this Class Action Complaint against Defendants Party City Corporation ("Party City"), Surestaff, LLC ("Surestaff"), Premier Employee Solutions ("Premier"), and Minute Men of Illinois, Inc. ("Minute Men") (collectively, the "Staffing Agencies") (Party City and the Staffing Agencies collectively referred to as "Defendants") to put a stop to their unlawful collection, use, and storage of Plaintiffs' and the putative Class Members' sensitive biometric data. Plaintiffs, for Plaintiffs' Amended Class Action Complaint, allege as follows upon personal knowledge as to Plaintiffs' own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.      Defendant Party City is a party supply company with a distribution center located at 2727 W. Diehl Rd., Naperville, IL 60563 ("Distribution Center").

2.     The Staffing Agencies provided staffing services to Party City and assigned Plaintiffs and other employees to work for Party City at the Distribution Center.

3.     Party City and the Staffing Agencies used, possessed, collected, or otherwise obtained biometric identifiers or information from finger scan timeclocks installed at the Distribution Center.

4.     When employees first begin their jobs at Party City, they are required to scan their fingerprint in a biometric time tracking system as a means of authentication, instead of using only key fobs or other identification cards.

5.     While there are tremendous benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes workers to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking.

6.     Recognizing the need to protect their citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

7.     Despite this law, Defendants disregarded workers' statutorily protected privacy rights and unlawfully collect, store, and use their biometric data in violation of the BIPA. Specifically, Defendants have violated (and continue to violate) the BIPA because they did not:

- Properly inform Plaintiffs and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Provide and follow a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and the Class's fingerprints, as required by the

BIPA; nor

- Receive a written release from Plaintiffs or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA.

8.    Accordingly, this Complaint seeks an order: (i) declaring that Defendants' conduct violates the BIPA; (ii) requiring Defendants to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiffs and the proposed Class.

## PARTIES

9.    Plaintiffs are natural persons and citizens of the State of Illinois.

10.    Party City and the Staffing Agencies jointly employed the Plaintiffs.

11.    Defendant Party City is a foreign corporation that owns and operates the Distribution Center where the Plaintiffs worked and scanned their fingerprints.

12.    Party City uses temporary employment companies, including the Staffing Agencies, to staff its facility, especially during months of high-volume business between Halloween and New Year's Day. To streamline employee time management, Defendants use finger scan timeclocks.

13.    Defendant Surestaff is a foreign limited liability company. Surestaff employed and assigned Plaintiffs Willey McGinnis, Shardae Bailey, and Donameen Jones to work at the Distribution Center in 2016.

14.    Defendant Premier is a foreign limited liability company. Premier employed and assigned Plaintiffs Willey McGinnis, Shardae Bailey, and Donameen Jones to work at the Distribution Center.

15.    Defendant Minute Men is an Illinois corporation. Minute Men employed and assigned Plaintiff Demetrius Stewart to work at the Distribution Center in 2016.

16.     The facility where Plaintiffs worked is managed through vertically integrated operations whereby Party City contracted with the Staffing Agencies to assign and manage employees, including to implement the biometric scanning system to track employee time and tracks hours worked for payroll purposes.

17.     Specifically, Party City subcontracts to the Staffing Agencies staffing duties for the Distribution Center. Party City retains ultimate control over the Distribution Center and the hiring, management, and payroll decisions for employees who work at its facility.

18.     Party City oversees and directs the Staffing Agencies' personnel, including for the conduct alleged in this complaint relating to the collection of biometric information. For example, Party City's human resources department directs personnel and payroll issues for the Staffing Agencies.

19.     All biometric timeclock information collected at the Distribution Center is available and accessible to Party City and the Staffing Agencies for their respective employees. Either directly, or through a partnership or other organized relationship, the Defendants collected, stored, and possessed the biometric information of Plaintiffs and other employees.

**JURISDICTION AND VENUE**

20.     This Court has personal jurisdiction over Defendants because Defendants conducted business and scanned, collected, possessed, or otherwise obtained Plaintiffs' fingerprint data in Illinois.

21.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and Defendants are citizens of different states and there is over $5,000,000 is in controversy. *See* ECF No. 1, Notice of Removal.

22.     Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. §

1391(a)(2) because the events giving rise to this action took place here.

**FACTUAL BACKGROUND**

**I.     The Biometric Information Privacy Act.**

23.     In the early 2000's, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became wary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

24.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

25.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

26.     The BIPA is an informed consent statute which achieves its goal by making it

unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(b).

27.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS 14/10.

28.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id*.

29.     The BIPA also establishes standards for how employers must handle Illinois employees' biometric identifiers and biometric information. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

30.     Ultimately, the BIPA is simply an informed consent statute. It is narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     Defendants Violate the Biometric Information Privacy Act.

31.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

32.     Unfortunately, Defendants failed to take note of the passage of the BIPA despite that it has been in effect for over a decade and Defendants are presumed to know the law. Defendants continued to collect, store, and use their employees' biometric data in negligent, and potentially willful or reckless, violation of BIPA.

33.     Specifically, when employees worked for Defendants they are required to have their fingerprints scanned in order to enroll them in their fingerprint database.

34.     Defendants use an employee time tracking system that requires employees to use their fingerprints as a means of authentication. Unlike a traditional timeclock, employees have to use their fingerprint to "punch" in to or out of work.

35.     Defendants failed to inform their employees of the complete purposes for which it collect their sensitive biometric data or to whom the data is disclosed, if at all.

36.     Defendants similarly failed to provide their employees with a written, publicly available policy identifying their retention schedule, and guidelines for permanently destroying their employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. An employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Defendants' databases—or if they ever will be.

37.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Defendants' —whose employees are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Defendants disregard these obligations, and instead unlawfully collect, store, and use their employees' biometric identifiers and information without proper consent.

38.     Ultimately, Defendants disregard their employees' statutorily protected privacy rights by violating the BIPA.

### FACTS SPECIFIC TO PLAINTIFFS

39.     Plaintiffs worked for Party City at the Distribution Center in Illinois for varying time periods through 2017, depending upon their respective assignments through the Staffing Agencies.

40.     Plaintiffs Willey McInnis, Shardae Bailey, and Donameen Jones were assigned to work at Party City by Surestaff and required to scan their fingerprint as an authentication method to track time.

41. Plaintiffs Willey McInnis, Shardae Bailey, and Donameen Jones were assigned to work at Party City by Premier and required to scan their fingerprint as an authentication method to track time.

42. Plaintiff Demetrius Stewart was assigned to work for Party City by Minute Men and required to scan their fingerprint as an authentication method to track time.

43. For clarity, Plaintiffs were assigned to work at the Distribution Center for Party City through the following Staffing Agencies and required to use a fingerscan timeclock to clock in and out:

| Willey McInnis | Premier | Sure Staff |
| Shardae Bailey | Premier | Sure Staff |
| Donameen Jones | Premier | Sure Staff |
| Demetrius Stewart | | Minute Men |

44. Each time Plaintiffs began and ended a workday, Defendants required a scan of Plaintiffs' fingerprints.

45. Defendants never informed Plaintiffs of the specific limited purposes or length of time for which it collected, stored, or used fingerprints.

46. Similarly, Defendants never informed Plaintiffs of any biometric data retention policy it developed, nor whether it will ever permanently delete fingerprints, or adhered to any biometric data retention policy.

47. Plaintiffs never signed a written release allowing Defendants to collect or store fingerprints.

48. Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of the BIPA alleged herein.

49. Plaintiffs now seek liquidated damages under BIPA as compensation for the

injuries Defendants have caused.

## CLASS ALLEGATIONS

50.     **Class Definition**: Plaintiffs bring this action on behalf of Plaintiffs and a Class of similarly situated individuals, defined as follows:

> All persons who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by any of Defendants while in Illinois.

The following people are excluded from the Class: (1) any Judge presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51.     Plaintiffs and the Class are similar to one another because they were all subject to the same allegedly illegal practices: scanning their fingerprints in Defendants' biometric time clock system despite Defendants failing to adhere to the requirements of the Biometric Information Privacy Act.

52.     The Class includes approximately 1,000 members. *See* ECF No. 1, Notice of Removal, ¶ 29.

53.     As a result, the Class is so numerous that joining of all class members in one lawsuit is not practical.

54.     The issues involved in this lawsuit present common questions of law and fact, including: whether Defendants required the Class to use their fingerprints to clock in and out during shifts; whether Defendants collected the Class's biometric identifiers or information; and

whether Defendants complied with the procedures in 740 ILCS 14/15(a) and (b) of the Biometric Information Privacy Act.

55.     These common questions of law and fact predominate over the variations that may exist between members of the Class, if any.

56.     Plaintiffs, the members of the Class, and Defendants have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

57.     If individual actions were required to be brought by each member of the Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendants.

58.     Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

59.     The books and records of Defendants are material to Plaintiffs' case as they disclose how and when Plaintiffs and the Class scanned their fingerprints in Defendants' biometric time clock system and what information Defendants provided Plaintiffs and the Class about the collection, retention, use, and possession of their biometric identifiers and information.

60.     Plaintiffs and counsel will fairly and adequately protect the interests of the Class.

61.     Plaintiffs retained counsel experienced in complex class action litigation.

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(<u>On Behalf of Plaintiffs and the Class</u>)**

62.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

63.     The BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a

customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…." 740 ILCS 14/15(b) (emphasis added).

64.    The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the employment relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

65.    Unfortunately, Defendants fail to comply with these BIPA mandates.

66.    Defendants each qualify as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

67.    Plaintiffs and the Class are individuals who had their "biometric identifiers" collected by Defendants (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10.

68.    Plaintiffs and the Class' biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

69.    Defendants violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiffs and the Class before it collected, used, and stored their biometric identifiers and biometric information.

70.     Defendants violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiffs and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

71.     Defendants violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiffs and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

72.     Plaintiffs violated 740 ILCS 14/15(a) by failing to adhere to a publicly available retention schedule or guidelines for the permanent destruction of employees' biometric identifiers and biometric information.

73.     By collecting, storing, and using Plaintiffs' and the Class' biometric identifiers and biometric information as described herein, Defendants violated Plaintiffs' and the Class' rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

74.     On behalf of themselves and the Class, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiffs and the Class by requiring Defendants' to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages for each of Defendants' violations of the BIPA pursuant to 740 ILCS 14/20; and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above,

appointing Plaintiffs as representative of the Class, and appointing their counsel as Class Counsel;

  B.  Declaring that Defendants' actions, as set out above, violate the BIPA;

  C.  Awarding statutory damages for each of Defendants' violations of the BIPA, pursuant to 740 ILCS 14/20;

  D.  Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendants to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

  F.  Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

  G.  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

  H.  Awarding such other and further relief as equity and justice may require.


Dated: March 31, 2021      Respectfully submitted,

            **Willey McInnis, Demetrius Stewart, Shardae Bailey, and Donameen Jones, individually and on behalf of all others similarly situated,**

            By: /s/ Mara Baltabols
              One of Plaintiffs' Attorneys

            David Fish
            dfish@fishlawfirm.com
            Mara Baltabols
            mara@fishlawfirm.com
            THE FISH LAW FIRM, P.C.
            200 East Fifth Avenue, Suite 123
            Naperville, Illinois 60563
            Tel: 630.355.7590
            Fax: 630.778.0400
            docketing@fishlawfirm.com